UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SERKAN CAGLAR,

                    Petitioner,

       v.

CAMMILLA WAMSLEY, BRUCE SCOTT, KRISTI NOEM, PAMELA BONDI, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

                    Respondents.

Case No. 2:26-cv-00787-TMC

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS

## I.    INTRODUCTION

Before the Court is Petitioner Serkan Caglar's petition for writ of habeas corpus. Dkt. 1. Detained by Respondents in the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), Caglar challenges the constitutionality of his re-detention without "providing him written notice and a meaningful opportunity to be heard." *Id*. at 11. While the Court agrees that Caglar's procedural due process rights have been violated, it concludes that the violation can be remedied by a post-deprivation hearing where the government must prove that Caglar's re-detention is justified. The Court therefore GRANTS Caglar's petition for writ of habeas corpus but denies his request for immediate release from custody. Instead, Respondents

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 1

must either release Caglar or provide him a hearing on his re-detention within 7 days of this Order.

## II.    BACKGROUND

Around May 27, 2024, Caglar came to the United States seeking asylum. Dkt. 5 ¶ 5; Dkt. 1 ¶¶ 1, 5. Caglar is a Turkish national who is Kurdish, and according to his petition he was fleeing "severe abuse and persecution" of Kurds by the Turkish government. Dkt. 1 ¶ 1. He entered near Tecate, California, where he encountered U.S. Customs and Border Protection ("CBP") agents. Dkt. 5 ¶¶ 5–6. He was arrested and released on the same day with an Order of Recognizance ("OREC"). *Id.*; Dkt. 6-2 at 2.

Caglar submitted an asylum application and was granted employment authorization while it was pending. Dkt. 1 ¶¶ 5–6. "For over two years, [Caglar] maintained a stable residence, remained in constant contact with immigration authorities, and was gainfully employed as a Truck Driver." *Id.* ¶ 6.

On November 25, 2025, Idaho State Patrol officers stopped Caglar for "multiple highway violations and infractions" while he was driving a truck through the state for work. Dkt. 5 ¶ 8. While holding Caglar, Idaho State Patrol contacted CBP, who requested assistance from Immigration and Customs Enforcement ("ICE") to determine Caglar's immigration status. Dkt. 6-3 at 3. ICE agents arrived and determined after interviewing Caglar that he "did not have legal status in the United States." *Id.* at 3–4. "CBP revoked [Caglar's] OREC," the Department of Homeland Security issued an administrative warrant for Caglar's arrest, and ICE agents took Caglar into custody. Dkt. 5 ¶ 8; Dkt. 6-4 at 2. Caglar was transferred the next day to NWIPC, where he has remained since. Dkt. 5 ¶ 8. There is no evidence that Caglar was provided with any written notice as to why his OREC was revoked, although Respondents' records show he was provided a copy of the arrest warrant. Dkt. 6-4 at 2. Respondents maintain that Caglar is subject

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 2

to mandatory detention, and he has not received a bond hearing under 8 U.S.C. § 1226(a). *See* Dkt. 4 at 5–7.

On March 4, 2026, Caglar appeared before an Immigration Judge who denied "all forms of relief and ordered [Caglar] removed to Turkey." Dkt. 5 ¶ 11. The order was timely appealed and is pending before the Board of Immigration Appeals. *Id.* ¶ 12.

The instant petition was filed on March 9, 2026. Dkt. 1. Federal Respondents filed their return on March 24, 2026. Dkt. 4. Caglar filed a traverse on March 26, 2026. Dkt. 7.

### III.    LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

### IV.    DISCUSSION

Caglar seeks an order releasing him "from custody immediately" and "permanently enjoining" Respondents from re-detaining him "during the pendency of his removal proceeding absent written notice and a hearing prior to re-detention." Dkt. 1 at 11. Caglar argues that his re-detention violates his Fifth Amendment right to procedural due process, as he was re-detained without notice or a hearing. *Id.* at 10–11.

Federal Respondents make several arguments in response. First, they argue that notice and a hearing are unnecessary because Caglar is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Dkt. 4 at 5–7 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026)). Second, they contend that Caglar's re-detention does not violate his right to procedural due process because he was "lawfully re-detained only after an objective, verifiable public-safety

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 3

violation." *Id.* at 7. Third, they argue that Caglar's requested injunctive relief is "unsupported by law and is impermissibly overbroad." *Id.* at 10. The Court will consider each of these arguments in turn.

### A.    Caglar is subject to discretionary detention under 8 U.S.C. § 1226.

Federal Respondents argue that notice and a hearing are unnecessary because Caglar is subject to mandatory detention under 8 U.S.C. § 1225 ("Section 1225"), not discretionary detention under 8 U.S.C. § 1226 ("Section 1226"). Dkt. 4 at 5–7. More specifically, Federal Respondents argue that Caglar is subject to Section 1225 because he "has not been admitted to the United States" and should be considered an "applicant for admission" subject to mandatory detention despite residing in the United States for more than a year under an OREC before his re-detention. *Id.* at 5–6.

As Federal Respondents acknowledge, this Court has previously concluded that "[d]etermining the basis for [Caglar's] detention requires analysis of the specific facts surrounding his previous interactions with immigration officials[,]" as those "who were apprehended on arrival could be subject to detention under § 1226(a) if the government had treated them as subject to discretionary detention since their arrival." *Maldonado v. Scott*, No. 2:26-CV-00014-TMC, 2026 WL 251819, at *2 (W.D. Wash. Jan. 30, 2026). Here, Respondents have treated Caglar as one subject to discretionary detention under Section 1226 since his arrival. Caglar was released on the same day he was first apprehended, on an OREC "[i]n accordance with [Section 1226]." Dkt. 6-2 at 2. The warrant for Caglar's November 2025 arrest also was made "pursuant to [Section 1226]." Dkt. 6-4 at 2.

Respondents concede that, if the Court were to apply the reasoning of *Maldonado* to this case, Caglar would be subject to Section 1226. Dkt. 4 at 6. The Court declines the invitation to

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 4

depart from *Maldonado*. Accordingly, Caglar is subject to discretionary detention under Section 1226, and he remains eligible for release on bond while his removal proceedings are pending.

> **B.     Caglar is entitled to a prompt post-deprivation hearing consistent with due process.**

Caglar argues that, as in other cases decided in this District, Respondents violated his right to procedural due process by failing to provide him notice and a hearing before his re-detention. Dkt. 1 at 7–9 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189 (W.D. Wash. 2025); and *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089 (W.D. Wash. Sept. 17, 2025)).

Federal Respondents argue that Caglar is "materially distinguishable" from the cases cited, as he was "lawfully re-detained" after "detainment by the Idaho State Patrol for multiple trucking and highway violations that the state agency itself determined posed a clear threat to public safety." Dkt. 4 at 7. Federal Respondents conclude that the revocation of Caglar's OREC "was not arbitrary or based on mere administrative convenience; it rested on concrete law-enforcement records confirming both the violations and [Caglar's] lack of lawful status." *Id.* at 8.

Federal Respondents are correct that this presents a different fact pattern from *E.A.T.B.* and similar procedural due process cases from this District: ICE decided to arrest Caglar and revoke his OREC only after he was detained by a state agency based on allegations of highway safety violations. In contrast to some of the cases Caglar relies upon, here there is no evidence in the record that ICE targeted him arbitrarily or relied on pretextual allegations of supervision violations to justify his arrest after the fact. In evaluating what the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause require in this circumstance, the

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 5

Court finds instructive Judge Liman's thorough analysis in *O.F.C. v. Almodovar*, No. 25-cv-9816 (LJL), 2026 WL 74262, at *6–15 (S.D.N.Y. Jan. 9, 2026).

First, as Judge Liman points out, Section 1226(b) "does not itself require a pre-deprivation hearing." *Id.* at *7. It does, however, "still require *some* process—namely, that there be an individualized determination regarding the noncitizen's dangerousness or risk of flight." *Id.* And "[i]n the context of bond revocation under Section 1226(b), any individualized determination requires not only a finding of dangerousness or risk of flight, but also of changed circumstances given that an immigration official or judge has necessarily previously found that the individual does not pose a risk of danger or flight." *Id.* (citing *In re Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)); *see also, e.g.*, *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025) (ordering release from custody where noncitizen was re-detained arbitrarily without any individualized determination of changed circumstances); *Y.M.M. v. Wamsley*, No. 2:25-cv-02075-TMC, 2025 WL 3101782 (W.D. Wash. Nov. 6, 2025) (similar). Here, the evidence in the record shows that an immigration officer made an individualized determination to obtain a warrant for Caglar's arrest and revoke his OREC based on his detention for highway safety violations by the Idaho State Patrol. *See* Dkt. 5 ¶ 8; Dkts. 6-3, 6-4.

Second, the Due Process Clause entitles Caglar to some additional protections beyond those provided by the INA and its regulations. As Judge Liman observes, noncitizens such as Caglar who have been released into the country pending removal proceedings "are in many ways similarly positioned to those who have been released from criminal confinement on probation or parole." *O.F.C.*, 2026 WL 74262, at *7. The Supreme Court has held that individuals so released are entitled to due process protections before having their liberty revoked. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation). *Morrissey* and *Gagnon* "offer broad support for the proposition that individuals who

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 6

reside in the United States through some permission of the Government enjoy a form of liberty that, even if 'not unlimited,' entitles them to due process protections." *O.F.C.*, 2026 WL 74262, at *7 (quoting *Rojas v. Almodovar*, No. 25-CV-7189 (LJL), 2025 WL 3034183, at *7 (S.D.N.Y. Oct. 30, 2025)). Noncitizens released into the country are "free to live their lives in this country and to 'form the . . . enduring attachments of normal life.'" *Id.* (quoting *Morrissey*, 408 U.S. at 482)). Accordingly, if the government wishes to strip Caglar "of that liberty and these attachments, it must do so in a manner consistent with due process." *Id.*

Third, those due process protections do not always require a hearing prior to arrest. In *O.F.C.*, Judge Liman concluded both by analogy to *Morrissey* and application of the *Mathews* balancing test that when a noncitizen has been convicted of a crime while released on bond, due process is satisfied by "a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances." *Id.* at *12. Similarly, the Court concludes that here, where ICE took custody of Caglar and revoked his OREC after he had already been detained by a state agency for alleged public safety violations, a post-arrest hearing is sufficient. *See also, e.g.*, *Quinonez Torres v. Hermosillo*, No. 2:26-CV-00076-TLF, 2026 WL 547591, at *10 (W.D. Wash. Feb. 23, 2026).

As in *O.F.C.*, application of the flexible *Mathews* three-part test confirms this result. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."). This test considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 7

burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court will consider each factor in turn.

1.        *"The private interest affected by the official action"*

Caglar argues that this factor weighs in his favor as the private interest affected by Respondents' actions is his liberty. Dkt. 1 at 7. Federal Respondents concede that Caglar has a substantial private interest in his liberty, but they claim that interest is "significantly diminished" because he was "re-detained only after committing public-safety violations while on supervised release." Dkt. 4 at 8.

This factor favors Caglar for three reasons. First, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Second, Caglar has been deprived of his liberty for a substantial time, nearly five months, without any opportunity to challenge his re-detention. *Cf. id.* at 701 (noncitizen's detention after a final removal order becomes presumptively unreasonable after six months). Third, while Caglar's detention by the Idaho State Patrol might affect other prongs of the *Mathews* test, it does not diminish his liberty interest. While the record supports Respondents' claim that ICE detained Caglar because of the alleged highway safety violations, it contains no information about whether those allegations were correct or amounted to a criminal offense. If Caglar is accused of violating the law and this violation has yet to be adjudicated, then his liberty interest is increased, not diminished. *See Rasmussen v. Garrett*, 489 F. Supp. 3d 1131, 1162 (D. Or. 2020) ("The right to be free from government restraint is particularly compelling when an individual accused of a crime has not been convicted at trial or entered a guilty plea.").

2.    *"Risk of erroneous deprivation"*

Caglar argues that ICE officers unilaterally re-detaining him creates an acute risk of erroneous deprivation of his liberty interest. Dkt. 7 at 5. Federal Respondents argue that the risk of erroneous deprivation under the procedures used is minimal for two reasons. First, Caglar's re-detainment was based on his "detainment by state law enforcement for public-safety violations." Dkt 4 at 8. Second, Caglar has already received "substantial process," making the "value of the additional procedures [he] demands" marginal at best. *Id.*

This factor also weighs in Caglar's favor. While Federal Respondents contend that Caglar has received "substantial process" in his removal proceedings, under Section 1226(a) he is eligible for bond during those proceedings, and yet he has never had an opportunity to challenge his re-detention. Even if the government can show that Caglar's traffic stop constitutes a material change in circumstances, he must still be provided with an "opportunity to address the bases asserted for his re-detention." *Sandhu v. Noem*, No. 2:26-CV-00465-TLF, 2026 WL 607701, at *3 (W.D. Wash. Mar. 4, 2026) (citing *E.A. T.-B.*, 795 F. Supp at 1322). It has been nearly five months since Caglar was re-detained and yet Respondents have not provided the details of the alleged public-safety threat that justified his re-detention. Dkt. 7 at 5. The absence of such information even now demonstrates the substantial risk of erroneous deprivation of Caglar's liberty interest if the government may revoke his OREC unilaterally with no opportunity for him to contest the allegations.

3.    *"The government's interest"*

Caglar argues that the burden in providing him a hearing, whether functional, fiscal, or administrative, is minimal for Respondents because immigration custody hearings are "routine, administratively modest, and already embedded in the system." Dkt. 7 at 5–6. Federal Respondents argue that the government has a strong interest in "enforcing its immigration laws,"

and "protecting the public from individuals who have demonstrated a disregard for the law and public safety." Dkt. 4 at 9.

This third factor is mixed. Caglar is correct that the administrative burden of a hearing is low, and the fiscal burden of a hearing is far lower than the cost of erroneously detaining someone who can be safely supervised on bond. Incarcerating a person who is not a poor bail risk "not only serves no purpose but undermines the Government's own interest in minimizing the fiscal and administrative effects of unnecessary incarceration and imposes societal costs by removing individuals from their families, communities, and jobs." *O.F.C.*, 2026 WL 74262, at *11. At the same time, the Ninth Circuit has recognized the government's "obvious interest" in enforcing its immigration laws, minimizing flight, and protecting the public from noncitizens who may pose a risk to public safety. *Rodriguez Diaz*, 53 F.4th at 1208. Where, as here, the government takes custody of a noncitizen for removal proceedings who was already detained by state officials based on an alleged public safety violation, that interest supports requiring only a prompt post-arrest hearing. *See O.F.C.*, 2026 WL 74262, at *11 ("[A]s in *Morrissey*, the Government might have an interest in temporarily holding an individual who has been convicted of a crime while on bond for a short period of time so that a neutral decisionmaker can confirm whether the individual constitutes a danger to the community.").

### 4.    *Remedy*

As in *O.F.C.*, this Court concludes that in this context, "due process requires the Government to provide a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances." *O.F.C.*, 2026 WL 74262, at *12. While in initial bond hearings under § 1226(a) the noncitizen must prove their entitlement to bond, this Court agrees with other district courts in this Circuit

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 10

that in the context of re-detention, the burden must be on the government to justify re-detention by clear and convincing evidence. "That burden shifting is logical even for a post-deprivation hearing . . . the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025); *see also, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034, 1038 (N.D. Cal. 2025); *Singh v. Noem*, No. 2:26-CV-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026).

### C.    Caglar is not entitled to injunctive relief.

Caglar seeks an order "permanently enjoining his re-detention during the pendency of his removal proceeding absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [Caglar] is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks." Dkt. 1 at 11. Federal Respondents argue that this request is "unsupported by law and is impermissibly broad." Dkt. 4 at 10. Caglar has not addressed the legal standard for permanent, prospective injunctive relief, and his request is inconsistent with the Court's decision that the government's procedural due process violation can be remedied by a hearing. The request for injunctive relief is therefore DENIED.

### V.    CONCLUSION

For these reasons, the Court GRANTS Caglar's petition for writ of habeas corpus. Dkt. 1. The Court ORDERS as follows:

    1.    Caglar's re-detention without a prompt post-arrest hearing and notice of said hearing violates the Due Process Clause of the Fifth Amendment.

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 11

2.     Within 7 days of this Order, Respondents must either release Caglar under the terms of his previous OREC or provide him a bond hearing before an Immigration Judge at which the government bears the burden of proving by clear and convincing evidence his dangerousness or risk of flight based on changed circumstances.

3.     Counsel for Federal Respondents shall file a status report no later than May 6, 2026 informing the Court of the outcome of any bond hearing.

4.     Caglar's requests for immediate release and injunctive relief are denied.

5.     Any fee petition must be filed within the deadlines set by the Equal Access to Justice Act.

Dated this 24th day of April, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS - 12